IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER P. PATAKI | : | CIVIL ACTION |
| v. | : | |
| PRUDENTIAL FINANCIAL, INC., AND THE PRUDENTIAL INSURANCE COMPANY OF AMERICA | : | NO. 06-621 |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Prudential Financial, Inc. and The Prudential Insurance Company of America (hereinafter referred together as "Prudential") by and through their counsel, hereby move this court for summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56. In support of its motion, defendants aver as follows:

1. Plaintiff Pataki is a 45 year old man who was employed as a Secured Research Lending Analyst at MBNA Corporation when he stopped working on July 9, 2002 due to a diagnosis of dermatomyositis and pulmonary emobolus. (See, PRU 116, 124, 826, 829 of the Record, filed under separate cover)

2. As a result of his illness, Pataki filed a claim for LTD benefits under Group Contract G-24923 ("Policy") issued to his employer, MBNA Corporation. (See, Pru 834-880 of the Record.)

3. This disability Policy is an employer-sponsored benefit program and, as such, is subject to the terms of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.*

4. Under the Policy, Prudential is provided discretionary authority to interpret the terms and conditions of the Policy, including when "disability" exists.

5. The Policy provides that a claimant is disabled when:

- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

- you have a 20% or more loss in your *indexed monthly earnings* due to that *sickness* or *injury*.

After 36 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.

(See, PRU 843 of the Record), emphasis added.

6. Pataki's occupation as a Secured Research Lending Analyst is a sedentary position which requires him to exert force to lift/carry, push/pull objects to 10 pounds occasionally or up to negligible weight frequently. It also may require the need to walk and or stand occasionally throughout the work day and have frequent use of upper extremities for reaching, handling, or fingering items. (See, PRU 106, 829 of the Record)

7. Pataki was first diagnosed in September of 1999 with dermatomyositis. (See, PRU 124, 829)

8. Plaintiff first went out of work on disability in February of 2000 when he had an aggravation of his condition of dermatomyositis and was unable to move his muscles. He returned to work and worked 4 hours per day for two to three months, then ten months at 6 hours a day and then returned to work full time. (See, PRU 56, 124 of the Record)

9. In July of 2002 plaintiff's rheumatologist advised him that his enzyme levels were very high, a sign that his dermatomyositis was flaring up. He stopped working at that time and underwent treatments for his illness. (See, PRU 56 of the Record) In the midst of his treatment for dermatomyositis, Pataki suffered a deep vein thrombosis in his lung in August of 2002 and was hospitalized. (See, PRU 56, 806 of the Record)

10. Plaintiff returned to work part time by November of 2002. (See, PRU 56, 125 of the Record) After the required elimination period of 180 days, plaintiff was eligible for long term disability benefits on January 5, 2003. (See, PRU 116, 834 of the Record)

11. Prudential reviewed the Attending Physician's Statement which was submitted along with plaintiff's LTD disability claim. Pataki's rheumatologist notes that he is out of work due to dermatomyositis (acute inflammation of the muscles characterized by fever, malaise and weakness) and pulmonary embolus. (See, PRU 56, 826-828 of the Record) The doctor states that the prognosis for Pataki's return to work is excellent and expects him to be able to return to full time duty in early 2003. (See, PRU 826-828 of the Record)

12. After examining plaintiff's medical records, Prudential notes that Pataki has a chronic condition which needs to be medically managed and followed for improvement. (See, PRU 57 of the Record) On January 30, 2003, Prudential approved Pataki's claim for partial LTD benefits.

13. Prudential continued to monitor Pataki's condition and in July of 2003, plaintiff's doctor approved an increase of 30 minutes per work day. (See, PRU 131-132 of the Record) By September 30, 2003, Pataki's doctor had increased his work hours to six hours per day. (See, PRU 132, 726 of the Record)

14. However, in December of 2003, Pataki's hours were reduced again to four hours per day as he was allegedly suffering from myalgia or muscle pain and weakness in both his arms and legs. (See, PRU 719 of the Record)

15. Prudential continued plaintiff's partial LTD benefits noting that a consistent decrease in his medications would be needed prior to determining whether an increase of work hours was possible. (See, PRU 78 of the Record)

16. Prudential continues to monitor plaintiff's condition and extends benefits for another year. (See, PRU 91, 505-508 of the Record)

17. On May 2, 2005, an internal medical review by Prudential determined that Pataki's medical conditions seemed to have improved and a functional capacity review was suggested. (See, PRU 98-99, 361-363 of the Record)

18. A functional capacity evaluation by plaintiff's rheumatologist was completed, and indicated that with position change, Pataki could sit for four hours, stand for two hours, and walk for 1 hour during an eight hour work day. (See, PRU 105, 441-443 of the Record)

19. After a discussion of Pataki's claim with the Medical Director, it was determined that because Pataki's enzyme levels were still elevated (his muscle enzyme levels are objective indicators of inflammation in the muscle), Prudential would continue to pay partial LTD benefits. However, Prudential also decided to retain an investigator to document Pataki's functional level. (See, PRU 107, 406-412, 421-424 of the Record)

20. The investigation, which consisted of video surveillance, live surveillance, and a background information check, revealed that Pataki was active and had no apparent functional limitations. (See, PRU 406-412 of the Record)

21. The investigators observed plaintiff for two days, on November 15 and 16 of 2005, and on both days he visited the YMCA gym at approximately 8:45 a.m. to exercise for a little over an hour each day. (See, PRU 406-412 of the Record) The first day plaintiff participated in an hour long yoga class. On the second day, plaintiff was videotaped vigorously exercising. (Id.)

22. In January of 2006, Prudential referred Pataki's file, including new medical records and surveillance reports for a review with its Medical Director, Albert Kowalski, M.D.

23. Dr. Kowalski reports that while there are laboratory results reflecting elevated muscle enzymes which would appear to indicate muscle inflammation, these enzyme readings do not correlate with the plaintiff's symptoms, physical findings, or his sedimentation rate. (See, PRU 117-118 of the Record) The medical records for 2005 reveal that plaintiff's dermatomyositis is well controlled with no reported muscle pain and a reduction in his medication. There is also no indication that the plaintiff's other illnesses such as deep vein thrombophlebitis, pulmonary embolus, diabetes or depression resulted in significant impairment to the plaintiff in 2005. (Id.)

24. Dr. Kowalski concludes that the wide variations in enzyme readings results from plaintiff's strenuous exercise program. (Id.) Dr. Kowalski also opines that plaintiff is able to work a full day at his sedentary job even with his elevated enzyme readings because the subjective complaints, physical examination and laboratory findings do not support impairment from his dermatomyositis. (Id.) Dr. Kowalski states that the latest office visit note dated November 2005 reflects that Pataki has very little complaints of myalgia or arthralgia. (See,

PRU 117-118, 294-296 of the Record)  While Pataki does complain of lack of endurance and mid-afternoon fatigue, the surveillance video demonstrated that plaintiff is able to engage in a strenuous exercise regiment for over a 45 minute period.  This video strongly supports the claimant's ability to perform his sedentary occupation on a full time basis.  (Id.)

25. On January 25, 2006, Prudential terminated plaintiff's partial LTD benefits.  (See, PRU 15-18, 120 of the Record)

26. On February 1, 2006, plaintiff appealed Prudential's decision to terminate his benefits.  He indicated that his doctor would be forwarding medical documentation to support his appeal.  (See, PRU 273 of the Record)

27. On March 13, 2006, plaintiff followed up with another letter of appeal outlining the history of his dermatomyositis and alleging that he exercised daily in order to manage his diabetes and that aerobic exercise allowed him to discontinue his oral insulin medication.  (See, PRU 268-272 of the Record)

28. Plaintiff also disputes the January 25, 2006 termination of his benefits stating that his unconfirmed Raynaud's phenomenon impacts his ability to use the computer.

29. However, plaintiff's own rheumatologist indicates that he has no restrictions of handling, grasping, fingering, and feeling in his functional capacity evaluation.  (See, PRU 441 of the Record)

30. The only documentation received in support of his appeal (other than plaintiff's own explanations) is a short letter dated April 10, 2006 from Pataki's rheumatologist, Dr. Newman, and some documentation from YMCA.  (See, PRU 264-266 of the Record)

31.  The letter from Dr. Newman merely states that plaintiff's illness has been generally well controlled in recent years with occasional flares, although there appears to be some continual low grade activity which is reflected by the mild elevation of the CPK enzymes. (See, PRU 264 of the Record)

32.  A reading of Dr. Newman's letter reveals no certain explanation for plaintiff's subjective complaints of lack of endurance and fatigue. His letter merely states that it is within the realm of medical possibility that the mild hypothyroidism and the condition of inflammatory myopathy could theoretically be causing plaintiff's reported fatigue. (See, PRU 264 of the Record)

33.  On May 15, 2006, plaintiff wrote again to Prudential disputing the medical opinions of Prudential's medical director Dr. Kowalski and the surveillance results. (See, PRU 262-263 of the Record) Plaintiff's main source of defense appears to be that he needs to exercise in order to maintain his health. There is no dispute that he should exercise. The dispute here is that he states that he is unable to work full time and yet is capable of the vigorous exercise reflected in the video surveillance. (See, PRU 881 of the Record)

34.  On June 23, 2006, Prudential obtained a file review of plaintiff's case from a board certified rheumatologist, Dr. Paul F. Howard. (See, PRU 252-259 of the Record)

35.  Dr. Howard reviewed plaintiff's entire file and concluded that throughout the year of 2005 plaintiff's dermatomyositis was well controlled and caused no significant symptoms. (Id.)

36.  Dr. Howard can find no explanation for Pataki's complaints of fatigue in light of the well controlled dermatomyositis. In fact, in light of the lack of functional impairment, no

restrictions or limitations are indicated. (Id.) Dr. Howard opines that plaintiff's conditions of dermatomyositis, diabetes, and Raynaud phenomenon are well controlled with appropriate treatment and result in no functional limitation to the plaintiff. (Id.)

37. On July 5, 2006, after reviewing plaintiff's submissions, the surveillance reports, video surveillance, and the file review by Dr. Howard, Prudential upheld its decision to terminate the plaintiff's partial LTD benefits. (See, PRU 5, 122 of the Record)

38. As Prudential both administers and funds the policy, the proper standard of review is a sliding scale of heightened scrutiny of the arbitrary and capricious standard as set forth in McLeod v. Hartford Life and Accident Insurance Co., 372 F.3d 618, 623 (3d Cir. 2004).

39. However, the administrative record in this case exhibits no bias, procedural anomalies or suspicious events. Thus, the lowest level of heightened scrutiny should apply to Prudential's determination that plaintiff is not totally disabled from his or any other occupation. Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 385 (3d Cir. 2003) (courts have applied the low end of the sliding scale of heightened scrutiny when there is no evidence of a conflict other than the inherent structural conflict)

40. It is well settled that a court may not substitute its own judgment for that of plan administrators under either the deferential or heightened arbitrary and capricious standard. Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 256 (3d Cir. 2004), citing, Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc., 298 F.3d 191, 199 (3d Cir. 2002).

41. A "plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." Stratton, 363 F.3d at 256, quoting, Orvosh v. Program of

261940.1                                           9

Group Ins. For Slaried Employees of Volkswagon of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000).

42.     Prudential's decision to terminate Pataki's partial LTD benefits when there is no evidence of his inability to perform the duties of his or any other sedentary occupation is not arbitrary or capricious under any standard.

43.     There are no outstanding issues of fact, and defendants are entitled to judgment in their favor as a matter of law.

WHEREFORE, defendants Prudential Financial, Inc. and The Prudential Insurance Company of America respectfully request that summary judgment be granted in their favor and plaintiff's complaint be dismissed with prejudice.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP


BY:     s/Megan Harper
        Megan Harper, Esquire
        The Curtis Center, Suite 1130 East
        Independence Square West
        Philadelphia, PA 19106
        (215) 627-6900
        (215) 627-2665 (fax)
        Megan.harper@wilson.elser.com
        DE. Atty. I.D. No. 4103

        Attorney for Defendants,
        Prudential Financial Inc. and
        The Prudential Insurance Company of
        America

Dated: August 13, 2007

261940.1                                    10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER P. PATAKI | : | CIVIL ACTION |
| v. | : | |
| PRUDENTIAL FINANCIAL, INC., AND THE PRUDENTIAL INSURANCE COMPANY OF AMERICA | : | NO. 06-621 |

### ORDER

AND NOW, this ___ day of _____, 2007, upon consideration of defendants' Motion for Summary Judgment and any response thereto, it is hereby **ORDERED** and **DECREED** that said motion is **GRANTED,** and plaintiff's action is **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____ J.

261940.1