**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

CHRISTOPHER P. PATAKI    :
            :   CIVIL ACTION
    v.       :
            :
PRUDENTIAL FINANCIAL, INC.,  :
AND THE PRUDENTIAL INSURANCE :   NO.  06-621
COMPANY OF AMERICA    :
            :

**DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

**WILSON, ELSER, MOSKOWITZ, EDELMAN**
**& DICKER LLP**

**Megan Harper, Esquire**
**Attorney I.D. No. 4103**
**Suite 1130 East – Curtis Center**
**Independence Square West**
**Philadelphia, PA 19106**
**(215) 627-6900**
**Attorney for Defendants**
**Prudential Financial, Inc. and The Prudential**
**Insurance Company of America**

Filed:  August 23, 2007

263376.1

## TABLE OF CONTENTS

TABLE OF CITATIONS……………………………………………………    iii

NATURE AND STAGE OF PROCEEDINGS…………………...……………    1

SUMMARY OF THE ARGUMENT…………….…………………………….    2

COUNTERSTATEMENT OF THE FACTS…………………………………..    3

COUNTERARGUMENT……..…………………………………….………..    6

>    **PRUDENTIAL'S DETERMINATION THAT
>    PLAINTIFF IS CAPABLE OF PERFORMING
>    THE SEDENTARY DUTIES OF HIS OWN
>    OCCUPATION OR ANY OTHER OCCUPATION
>    ARE REASONABLE AND SUPPORTED BY
>    SUBSTANTIAL EVIDENCE.** ................................................    6

CONCLUSION/RELIEF REQUESTED……………………………….....    9

263376.1

## <u>TABLE OF CITATIONS</u>

**<u>CASES</u>**

<u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 123 S.Ct. 1965 (2003)    20

<u>Schlegel v. Life Ins. Co. of N. Am.</u>, 269 F.Supp.2d 612 (E.D. Pa. 2003)….    14, 20

<u>Stratton v. E.I. DuPont de Nemours & Co.</u>, 363 F.3d 250 (3d Cir. 2004)...    15, 20, 21

<u>Sweeney v. Standard Ins. Co.</u>, 276 F.Supp.2d 388 (E.D. Pa. 2003)………..    20

iii

# NATURE AND STAGE OF PROCEEDINGS

Defendants, Prudential Financial, Inc. and The Prudential Insurance Company of America (hereinafter referred to as "Prudential") agrees with plaintiff's recitation of the nature and state of proceedings.

1

## <u>SUMMARY OF THE ARGUMENT</u>

Defendants did not act arbitrarily or capriciously when it terminated plaintiff's LTD benefits because the administrative record failed to substantiate any functional impairment on the part of plaintiff from performing the duties of his sedentary occupation.

2

## COUNTERSTATEMENT OF THE FACTS

Pataki was first diagnosed in September of 1999 with dermatomyositis.  (See, PRU 124, 829)  Shortly thereafter, plaintiff went out of work in February of 2000 when he had an aggravation of his condition of dermatomyositis and was unable to move his muscles.  He returned to work and gradually increased his work hours until he was back to work full time after about a year.  (See, PRU 56, 124 of the Record)  Plaintiff continued to have his blood monitored to check for enzyme levels.  Nearly a year and a half later, in July of 2002 his rheumatologist advised him that his levels were very high.  He stopped working at that time and began treatment for his illness.  (See, PRU 56 of the Record)  Plaintiff received partial disability benefits for the next three years.  During these years, plaintiff developed other conditions.  However, plaintiff's conditions of Raynaud's phenomenon, diabetes, deep vein thrombosis, pulmonary embolus and depression were under control and did not cause any functional impairment in plaintiff.  (See, PRU 333 of the Record)

After three years the standard for disability under the policy changed from a requirement that plaintiff be unable to perform the substantial duties of his *own* occupation to a requirement that he not be able to perform the duties of *any* occupation.  (See, PRU 843 of the Record)  Prudential requested updated medicals to make a determination under the new standard.   In addition, Prudential also retained an investigator to document Pataki's functional level.  (See, PRU 107, 406-412, 421-424 of the Record)   The investigation documented that plaintiff was able to sustain a vigorous level of physical activity in the mornings prior to going to work.  (See, PRU 406-412 of the Record)  In fact, the investigative report indicated that plaintiff used the YMCA facility about 25 times a month usually in the mornings at 8:45 a.m. Monday through Friday and in addition 6:00 p.m. on Mondays and Wednesday.  (See, PRU000423 of the Record)

3

Plaintiff attempts to discredit this report by citing to a YMCA Facility Access Report which indicates that from January 1, 2004 through May 6, 2006 plaintiff used the facility 284 times which he states averages out to only 10 times per month.  However, it is important to note that the Facility Access Report shows time from 2004 to 2006 and does not discriminate between recent usage or past usage.  (See, PRU000266 of the Record)  Moreover, the video surveillance shows plaintiff using to the YMCA facilities on both mornings at 8:45 a.m. on two consecutive days.  (See, PRU000881 of the Record)

Prudential's Medical Director, Dr. Albert Kowalski, reviewed the results of the investigation and determined that while there are laboratory results reflecting elevated muscle enzymes which would appear to indicate muscle inflammation, these enzyme readings do not correlate with the plaintiff's symptoms, physical findings, or his sedimentation rate.  (See, PRU 117-118 of the Record)  He opined that these elevated readings could have resulted from plaintiff's strenuous exercise program.  Dr. Kowalski concluded that plaintiff is able to work a full day at his sedentary job even with his elevated enzyme readings because the subjective complaints, physical examination and laboratory findings do not support impairment from his dermatomyositis.  (Id.)  The surveillance video strongly supported an ability to perform his sedentary occupation on a full time basis.  (Id)

In addition, plaintiff fails to cite to the findings of Dr. Howard, a board certified rheumatologist, who conducted an independent medical record review of plaintiff's records.  Dr. Howard concluded that throughout the year of 2005 plaintiff's dermatomyositis was well controlled causing no significant symptoms.  (See, PRU 252-259 of the Record)  Dr. Howard can find no explanation for Pataki's complaints of fatigue in light of the well controlled

4

dermatomyositis.  In fact, in light of the lack of functional impairment, he states that there are no restrictions or limitations indicated.  (Id.)

 Thus, Prudential's decision to terminate plaintiff's partial long term disability benefits was based on substantial evidence that he is able to perform the sedentary duties of his occupation as well as any occupation and is not arbitrary or capricious.

<u>COUNTERARGUMENT</u>

**I.    LEGAL STANDARD**

The parties agree that the standard of review in this case is a deferential "arbitrary and capricious" standard of review. In addition, both parties agree that there is no issue of material fact.

**II.    PRUDENTIAL'S DETERMINATION THAT PLAINTIFF IS CAPABLE OF PERFORMING THE SEDENTARY DUTIES OF HIS OWN OCCUPATION OR ANY OTHER OCCUPATION ARE REASONABLE AND SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Plaintiff argues that he needs to exercise on a daily basis to combat the possibility of deep vein thrombosis (DVT) which he developed in August of 2002. This argument can be made by virtually anyone with a sedentary job or situation. However, the standard for granting long term disability is whether plaintiff is incapable of performing the substantial duties of his own occupation, or after 36 months, any occupation. The administrative record indicates that plaintiff has no functional limitations that prevent a return to full time work.

Prudential does not dispute that plaintiff has dermatomyositis or that this condition can cause muscular fatigue when it is active. However, as shown in 2000, plaintiff can return to work full time after the flare up of his disease has subsided. At the time that Prudential rendered its decision, there was substantial evidence that plaintiff had no functional limitations. The video surveillance revealed that plaintiff was capable of a vigorous exercise regiment in the morning and then the duties of his occupation in the afternoon.

At no time has Prudential ever discouraged plaintiff from exercise but the need for exercise is not a basis for granting disability benefits. The medical records show that his disease is under control and there are no clinical symptoms of muscular weakness, muscular pain, or resulting functional impairment. It appears that plaintiff's doctor bases his inability to return to

6

full time work on his subjective complaints of fatigue. However, there is no support in the record for the subjective complaints of fatigue. (See, PRU 252-259 of the Record) Even the plaintiff's doctor seems uncertain of what is causing plaintiff's fatigue mentioning that it could either be very mild hypothyroidism or the dermatomyositis itself. (See, PRU000264 of the Record)

That plaintiff's treating physicians had concluded that plaintiff was unable to perform any occupation would not be entitled to "special weight" under the law as it has existed at least since Black & Decker Disability Plan v. Kenneth L. Nord, 538 U.S. 822; 123 S. Ct. 1965 (2003). This is because courts have found that the opinions of a treating physician may also exhibit bias and conflict of interest. Stratton v. Dupont De Nemours & Co., 363 F. 3d 250, 258 (3rd Cir. 2004). See also, Sweeney v. Standard Ins. Co., 276 F. Supp. 2d 388, 396 (E.D. Pa. 2003) (reliance on the review of non-treating physicians is not a procedural anomaly that demands a heightened level of scrutiny); Schlegel v. Life Ins. Co. of N. Am., 269 F.Supp.2d 612, 627 (E.D. Pa. 2003) (the plan administrators' reliance on its own non-treating physician over the opinions of the insured's treating physicians did not render its decision to deny benefits arbitrary and capricious because in relying on its own non-treating physicians, the plan administrator violated no policy provision, nor did it render a decision that was arbitrary and capricious on this basis).

Plaintiff only cites to Dr. Kowalski's opinion that plaintiff is not disabled and has no functional limitations. He attempts to discredit Dr. Kowalski's opinion by stating that his interpretation that elevated levels of enzyme in plaintiff's blood could be related to the strenuous level of plaintiff's exercise regimen is not "accepted medical wisdom." Plaintiff has offered no proof that this is not accepted medical wisdom. In fact, he attempts to use Dr. Kowalski's earlier opinion that the elevated or inconsistent enzyme levels would indicate a part time work

restriction to discredit his later conclusion that the elevated enzyme level was caused by the exercise. However, the video surveillance demonstrated to Dr. Kowalski a possible explanation for the elevated enzyme levels and also supported the lack of clinical symptoms of muscle fatigue, pain, or weakness.

In addition, Prudential offered the opinion of Dr. Howard, a board certified rheumatologist, who also concluded that plaintiff was not disabled from the sedentary duties of his occupation. Plaintiff does not refer at all to Dr. Howard's opinion in his opening brief in support of his motion for summary judgment.

## <u>CONCLUSION</u>

In light of Dr. Howard and Dr. Kowalski's opinion and the results of the surveillance on plaintiff, it is clear that plaintiff has no functional limitations which would prevent him from performing the duties of his sedentary occupation or any other occupation. Thus, Prudential's decision to terminate benefits was based on substantial evidence and <u>not</u> arbitrary or capricious. Defendants, Prudential Financial, Inc. and The Prudential Insurance Company of America therefore respectfully request that summary judgment be entered in their favor, and that this action be dismissed with prejudice.

Respectfully submitted by,


BY:    _____s/ Megan Harper/_____
Megan Harper, Esquire
Attorney I.D. No. 4103
WILSON,ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Suite 1130 East – Curtis Center
Independence Square West
Philadelphia, PA 19106
(215) 627-6900
Attorney for Defendants
Prudential Financial, Inc. and The Prudential
Insurance Company of America

9